Appeal No. 20-1364 and Appeal No. 20-1742. Attorney Graves, please introduce yourself for the record and proceed with your argument. Good morning once again. My name is William Graves on behalf of the petitioner. Judge Thompson, may I reserve two minutes for rebuttal? Yes. Thank you. May it please the court. I represent the petitioner Piyadad Janet Munoz Zapata. Petitioner asks this court to reverse the decision of the Board of Immigration Appeals so that she can pursue her application for adjustment of status based upon her marriage to her U.S. citizen husband or to seek voluntary departure in the alternative. This case comes before this court based upon the denial of a motion to reopen an order of removal that was entered against petitioner. At the heart of this petition for review is the issue of equitable tolling. We are aware that this circuit has not expressly adopted equitable tolling but it has addressed the parameters of the doctrine and I'd like to discuss how petitioner fits within those parameters. In this case the petitioner clearly demonstrated that she acted with due diligence and that there were extraordinary circumstances that prevented her from timely filing her motion to reopen and that the board abused its discretion when it did not equitably toll the motion to reopen deadline for her case. I think the timeline here is critical in determining whether Ms. Munoz met the standard and whether the BIA abused its discretion in finding that she did not. First very briefly a little bit of background. The petitioner is a native and citizen of Columbia. She originally came to the United States as a visitor in 1998. She has three children. One is now in college at Wellesley and two are in high school in Boston. She filed for asylum I think in the mid or late 2000s and was placed in removal proceedings in 2010. While she was in removal proceedings before the immigration judge she applied for cancellation of removal in which she was required to establish that her children would suffer exceptional and extremely unusual hardship if she were removed to Columbia. In February of 2012 the immigration judge found that petitioner had not established the requisite hardship but granted Ms. Munoz voluntary departure in the alternative. Ms. Munoz timely appealed that decision to the Board of Immigration Appeals. While her case was pending before the immigration court Ms. Munoz was eligible for employment authorization and regularly renewed her application, her ability, her card, her work card before the U.S. Citizenship and Immigration Service. On October 31st, 2013 she received a denial of her application to renew and the denial letter indicated that she was no longer eligible because her pending case before the Executive Office of Immigration Review had been denied. So this is when Ms. Munoz first learned that the case before the immigration court and the Board of Immigration Appeals had been denied. Ms. Munoz immediately contacted her immigration lawyer. They learned that the Board of Immigration Appeals had issued its decision on the case in May of 2013, so approximately five months prior to the time that she learned about this. Neither the attorney nor the petitioner had received the copy. She waited an additional four years to move to reopen. How is that diligent? I think Judge Dyke what happened next is important. After she received the denial she went to her attorney. Her attorney requested a decision, a copy of the decision from the Board and in the meantime in December of 2013 she presented herself to Immigration and Customs Enforcement. So ICE is the agency that prosecuted her immigration case and ultimately is responsible for her removal. So she presented herself to ICE for removal and ICE basically declined to remove her. They invited her to ask her to apply for a stay of removal. So are you saying that she was somehow misled? I mean because due diligence is the efforts that the petitioner would have made but are you claiming a different kind of tolling that she was misled and therefore didn't pursue a reopening? I don't think that she was misled. I think that the officers did tell her that she didn't have to leave the United States and that was correct so provided that she followed this other procedure. She followed that procedure and then she annually returned to ICE to renew this application and annually applied to U.S. Citizenship and Immigration Service to renew her employment authorization card during this period. So I think she did act diligently. I mean she went to a sister agency within the executive branch that's also charged with immigration. Let's say that there's some force to the idea that because she was told that they were going to stay the removal order she had some equitable reason for us to conclude that the fact that she didn't move to reopen during that period of time is explainable or excusable. If I understand the petition though the only thing that would give merit that you're saying to the motion to reopen is the marriage that occurred at the tail end of that period. So I don't quite see how those two points match up because the idea would be will we excuse that period of time in which she didn't move to reopen when she could have. Normally that would suggest some event that arose in that period of time could now be raised but what you're suggesting is well even if we excuse all that period of time that gives her a reason to now seek a motion to reopen on the basis of an event that occurred after all that time passed. That seems pretty unusual. I think I understand your question Judge Barron and I think it is unusual but I think this is an unusual set of circumstances. Help me with that last part of it because I just have trouble because then the idea is when you get equitable tolling and then having waited all that time you now get to take advantage of some new events that wasn't available to you during the whole period of the tolling as the basis for the motion to reopen. So I think you need some explanation of why that would make sense to allow that to be the basis for me. Maybe there's more force to the sua sponte motion to reopen argument that you're making which is that but you know that's arbitrary in these circumstances to not give some credit to that but I think on the equitable tolling I don't really see how it helps you very much because even if we told that whole period there's no prejudice to her because you haven't identified anything that occurred in that period. That's the basis for the motion to reopen. Well I think two things. One is that I think the period of the stay was winding down. The policy which allowed her to remain in the United States came into effect during the Obama administration and was winding down and that policy was later rescinded during the subsequent administration. So this period of this authorized period where she was allowed to stay here was going to expire although at the time that she filed her motion she was still in the authorized period of stay. So you haven't identified anything that arose during that period. That's the basis for the motion to reopen. I think that she could have also filed the motion to reopen to reinstate the voluntary departure so that she could leave voluntarily rather than under an order of removal. So I think that she also had that alternative. Had she not been married I think it would have been appropriate also for her to file that motion to reopen to ask again to have voluntary departure reinstated so that she could travel on her own as opposed to traveling, being taken into custody and being deported and having an order of deportation. That piece of it might have been available. I follow that but what about the other piece which is the adjustment of status piece or the motion to reopen because of adjustment of status. That is not something that arose during the period of time. The only thing you've identified is something that occurred after that period of time. The marriage occurred during this time that she was under a stay. I think it would have been disingenuous. She got married in 2016 so while she was in this period of authorized stay. How long after the time for when she could have filed the motion to reopen is that? Isn't that about four years? No, I think she could have conceivably filed in 2016. She filed in I believe 2017 the initial motion to reopen. The I-130 petition filed by her spouse was pending and actually under BIA case law she could have filed with that pending and she did. Just match up for me the timeline between the marriage and the period of tolling that you're talking about. Do you follow what I'm saying? The typical thing is that I had some event that arose in the period of time that is the timely period but I had a good reason for not filing then. We should excuse the fact that I'm now filing late to bring it. Just help me figure out how this is like that when it doesn't look like that. I don't think it looks exactly like that because it's a slightly different situation. I think because of the removal policy and the discretionary policy that was in effect, she was granted the stay so that she could stay with her children. I think that she couldn't reasonably be expected to file a motion to reopen during that period of time. One branch of the government that's in charge of her removal tells her that she can stay. She can stay with her family for the purposes of family unity. Let's go at it another way what Judge Barron is asking you. When she was here with permission to stay, did she get married? During that period of time, she got married. How far into that period of time did she get married? I believe she was married in 2016. That would have been a year and a half or two years into the period of stay. What was her period where she had to file the motion to reopen to be timely? Outside of equitable tolling. That would have been 90 days after the order of removal. How late did the marriage occur relative to when a timely motion would have been filed?  I think in this particular set of circumstances, that part isn't directly relevant. I think her case should be equitably tolled because the Department of Homeland Security authorized her to remain in the United States. She got married during this time so a new form of relief arose. Even if no new form of relief arose, I think at the end of that authorized period of stay from DHS, at that point she could have filed a motion to reopen to seek voluntary departure to leave. That was no longer necessary or no longer her only form of relief. She now had a new potential form of relief based upon the marriage to her husband. She filed the motion to reopen based upon the marriage to her husband. Thank you, Counselor. Any other questions? Thank you. Attorney Graves, you may mute your audio and video at this time. Attorney Marshall, please unmute your audio and video and introduce yourself on the record. May it please the court, I'm Lindsay Marshall on behalf of the Attorney General. The crux of this case is whether the Board abused its discretion in determining equitable tolling did not excuse Ms. Minos' untimely motions to reopen, where she didn't show the requisite due diligence or extraordinary circumstances. Two hurdles stand in the way of Ms. Minos demonstrating the requisite due diligence. First, she chose to temporarily delay the execution of her removal order through four years of stays rather than pursue a remedy to the underlying order. Well, she had an alternative legal remedy available to her through the executive order. The stays of removal? Yes. The problem is that this didn't give her status or remedy her final order of removal. All it did was stave off the date of her removal. The order still existed and she still had no status. And in her opening brief, she says that she made a decision that she turned herself into ICE with the intention of leaving the country. And then she decided that she would simply take advantage of these stays of removal. And these, again, temporary solutions were what she took advantage of for years and did nothing to remedy the underlying problem, the order of removal. Her second and higher hurdle is that she offers little explanation for her decision to wait to file her motion to reopen, even after she became potentially eligible to adjust her status. Can I ask you something just so I understand? She seems to be, one administration says, we're not removing you and you can get stays. Another administration comes in and says, no, now we're not doing those stays. We are removing you. What's the current administration's view? Your Honor, that's a good question. Right now, they have not really released a new policy. Is there a reason to decide this case until we're confident that the administration that we're dealing with now wants to remove such people? Well, I have reached out to DHS asking about this particular case if they were interested in pursuing some kind of prosecutorial discretion. And they've told me that in the absence of a formal policy, it would be up to petitioner to reach out individually and ask for something in her case. Certainly, if the court wanted to wait for a pronouncement of a new policy... Isn't this the ultimate reaching out? Your Honor, I did run it by DHS, but I think DHS has the same mind as Judge Barron here, that perhaps without a new policy, nothing much has changed yet. In their view... Well, would this be a case where our camp process might be useful for the parties to talk through whether there is really a reason for us to decide this case before the parties have had a chance to work through these issues? We certainly could. I think that it wouldn't change the merits of this case, which I'm happy to continue discussing. However, it would allow us to essentially stave off a decision to see if the administration changes the policy. The problem is we don't know what or when anything will change. Well, would this bring it to a head, this in the first case, or the other immigration case we heard today? Will this facilitate the administration setting a policy? Putting this case into some kind of abeyance or mediation, Your Honor? Yes, the camp program is our mediation program. I'm not certain it would convince DHS to hasten its process. From what I understand, that process is already ongoing. But it would certainly leave open more time for DHS to consider some kind of prosecutorial discretion in this case before the court reached a decision. If that's something that the court would be interested in us pursuing, I would be happy to approach my client for their views on that. In the meantime, I'm also happy to continue discussing the merits of this case if the court is interested in hearing them. Well, I'm somewhat. I'm interested in the sua sponte motion the petitioner identifies, and this I guess sort of bleeds into partly why I asked the question about prosecutorial discretion. They make a legal argument that there's been an arbitrary exercise of the sua sponte motion to reopen power by the BIA by identifying cases that they contend are not very dissimilar from this, in which the motion to reopen was granted sua sponte, which does raise the question of what we're supposed to do. I realize we can't review exercises of discretion. On the other hand, as Thompson suggests, we do review legal challenges to the motion to sua sponte motions to reopen. And if there's some reason to think that there was arbitrariness here, maybe that's a colorable legal argument. What's your response to that? The problem is that there is an equally robust body of case law in which the board has denied sua sponte reopening in similar cases. And I believe we identified several of those cases in our response brief. So why isn't that arbitrary? If you have one group of folks who have been granted relief and another similarly situated group of people, why isn't that arbitrary? Because sua sponte reopening and the act of the board's discretion requires them to weigh the facets of each individual case. This looks less like a lack of consistency than the board adhering to that standard and truly looking at the factors at issue in each case. And then after evaluating those unique circumstances. The only thing I can see in the case that is concerning is that she's relying on a potential adjustment of status based on a new marriage. But if that, in other cases, hasn't been a problem, all the equities would seem positive on her side. There's no identification of any reason to be concerned about the equities. So I guess I just don't really understand what is the criterion that the BIA is using to sort these cases. It doesn't have a rule that if it's a later rising marriage, that's not enough. But they do grant them sometimes for later rising marriages. Well, in terms of sua sponte reopening, I think that's part of the problem. The Supreme Court case name escapes me right now, but I would be happy to provide it. There is no standard by which the court can really adjudicate these kinds of questions. And because there is no standard, it becomes something that's a little difficult to review. The only time that this court has ever found that it can is when petitioner was able to definitively show that the board departed from its well settled course of adjudication. And we simply don't have that here. What we have is the petitioner wishing that the board adjudicated her case more in line with certain cases instead of other cases. And that's more of a disagreement with the outcome of the board's act of discretion rather than a legal or constitutional error in the way that the board administered its discretion. And to answer your question about some of the equities in this case, well, I think they're the same ones that gave the board pause in saying that equitable tolling did excuse the deadline here. Even though she does have a potential avenue to adjust her status at this point by virtue of her marriage in 2016, she took some time before she actually pursued a motion to reopen on that point. She married him in late 2016, and then they actually began the immigration petition process in May 2017. And yet she didn't file her motion to reopen until August 2018. And she provides no explanation for what was underlying her decision to delay that long. And also speaking to... Time has expired. Well, if there are no further questions, then I suppose I'll wrap up here. Thank you, Counselor. Thank you. That concludes the arguments for today. I'm sorry. We're going to hear from Attorney Graves for a two-minute rebuttal. Attorney Graves, please introduce yourself on the record. Good afternoon. Once again, this is William Graves for the petitioner. I guess there's just a couple of points. I think the Board, in its decision denying the motion to reopen, gave a very perfunctory decision and never really explicitly addressed either the issue of extraordinary circumstances or due diligence. And it simply dismissed the motion to reopen. It had all the evidence in front of her, including a letter from her attorney and her detailed declaration. But in their decision, they really give this court not much to go on. And I would say the extraordinary circumstance was the fact that neither she nor her attorney received the notice until after the 90 days had expired. So that extraordinary circumstance clearly exists. And as for due diligence, as I stated earlier, the petitioner acted immediately and took steps and continued to take steps for the entire period following her learning that the Board had made a decision on her case. The answer to the delay following the marriage? I think she was told by the sibling agency to the BIA that she could remain in the United States. And to file a motion to reopen earlier would have separated from her family, which ICE told her she did not need to do. And I think, again, she acted diligently. She returned every year to ICE and to USCIS to renew her stay and to renew her employment authorization. Just one final point, I just wanted to quickly address the sua sponte issue. There's a significant body of unpublished cases where applicants in petitioner's position who have been here for a long period of time, more than 20 years, have significant family ties. And here it's three U.S. citizen children and a U.S. citizen husband. And on top of that, the I-130 has already been approved under a higher standard that individuals who are in proceedings have to meet. So the Department of Homeland Security has clearly identified this as a bona fide marriage. There are numerous cases that were listed in the brief where the Board has reopened sua sponte, but they declined to do so in this. And I think that they have deviated from their standard of adjudication and that this court could consider that as well. Thank you, Counselor. Thank you. Thank you for hearing us, Your Honor. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.